IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OTABEK MURODOV,

    *Petitioner,*

v.

J.L. JAMISON, et al.,

    *Respondents.*

CIVIL ACTION
NO. 26-594

**Pappert, J.**                                                                                  **February 13, 2026**

<u>**MEMORANDUM**</u>

On January 28, 2026, Immigration and Customs Enforcement agents detained Otabek Murodov without a bond hearing. Murodov then filed a federal *habeas* petition, alleging his detention violates the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act. He seeks an order releasing him from custody and requiring a bond hearing before an immigration judge. Murodov also moves separately for a temporary restraining order to prevent the Government from transferring him outside the Eastern District of Pennsylvania and detaining him further. The Court grants the petition and denies the motion as moot.

I

Otabek Murodov is a native of Uzbekistan. (Pet. ¶ 18, Dkt. No. 1.) Around May 17, 2023, Murodov arrived in the United States at a port of entry in San Ysidro, California and expressed his intent to seek asylum. (*Id.* ¶ 19.) The Government issued him a Notice to Appear, (*Id.* ¶¶ 19–20), which began removal proceedings against him, *see generally* (Gov't Resp. in Opp'n Ex. A, Dkt. No. 5-1.) On the Notice to Appear, a Customs and Border Protection agent checked a box stating Murodov was "an arriving

1

alien." *See* (*Id.* at 2.)  The same day, the Government paroled him into the country. (Pet. ¶¶ 19–20.)

Murodov moved to Philadelphia and applied for asylum on November 21, 2023. (*Id.* ¶¶ 21–22.)  Immigration officials scheduled a hearing on his asylum application for April of 2027, (*Id.* ¶ 23), but ICE agents arrested him on January 28, 2026 during a regular check-in and transferred him to the Philadelphia Federal Detention Center, (*Id.* ¶ 25.)  According to the Government, Murodov is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), making him ineligible for a bond hearing.  (*Id.* ¶¶ 15–17, 33).

## II

### A

The Government first argues the Court lacks jurisdiction to "intervene" in what it contends is a mandatory detention under 8 U.S.C. §§ 1252(g), 1252(b)(9) or 1252(a)(2)(B)(ii).  (Gov't Resp. in Opp'n at 10, Dkt. No. 5.)  Several hundred district courts—including this one—have rejected that argument.  *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (citing 282 out of 288 decisions objecting to the Government's argument); *Khatidze v. Rose*, No. 26-503 (E.D. Pa. Feb. 5, 2026), Dkt. No. 4 (rejecting the Government's argument that the INA strips the Court of jurisdiction); *Salokhov v. Rose*, No. 26-433 (E.D. Pa. Feb. 2, 2026), Dkt. No. 4 (same); *Moun v. Rose*, No. 26-188 (E.D. Pa. Jan. 26, 2026), Dkt. No. 4 (same); *Jeireb v. Jamison*, No. 26-70 (E.D. Pa. Jan. 8, 2026), Dkt. No. 4 (same).

The Government relies on *Khalil v. President, United States of America*, 164 F.4th 259 (3d Cir. 2026).  There, the Third Circuit Court of Appeals held a petitioner must wait to raise claims challenging his removal until he files a petition for review of a

final order of removal. *Id.* at 273 (citing 8 U.S.C. § 1252(b)(9)). But *Khalil* noted a petitioner could still raise "detention-specific" challenges, such as those related to "prolonged detention without a bond hearing." *Id.* 277; *Jennings v. Rodriquez*, 583 U.S. 281, 294–95 (2018) (plurality opinion). Murodov challenges his mandatory detention without a bond hearing—not any removal proceedings against him. *See Restrepo v. Jamison*, No. 25-cv-6518, 2026 WL 141803, at *5 (E.D. Pa. Jan. 20, 2026) (holding that *Khalil* does not apply to challenges to mandatory detention without a bond hearing); *Giyosov v. Jamison*, No. 26-0298, 2026 WL 209839, at *4 (E.D. Pa. Jan. 27, 2026) (same); *Ramirez v. Bondi*, No. 26-0522, 2026 WL 321442, at *2 n.22 (E.D. Pa. Feb. 6, 2026) (same).

B

The Government next contends even if the Court had jurisdiction, Murodov is "an inadmissible arriving alien" subject to mandatory detention under § 1225(b)(2). (Gov't Resp. in Opp'n at 10–15, Dkt. No. 5.) The Government cites to 8 C.F.R. § 1001.1(q), which defines an "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry" and includes aliens who were "paroled" into the country or had "any such parole terminated or revoked." *See* 8 C.F.R. § 1001.1(q). Murodov applied for admission at a port of entry in November of 2023, *see* (Pet. ¶ 19), and a CBP agent indicated he was an "arriving alien" on his Notice to Appear, *see* (Gov't Resp. in Opp'n Ex. A at 2), so the Government concludes he must be detained under § 1225(b)(2).

But nowhere does § 1225(b)(2) mention "arriving alien." Section 1225(b)(2)(A) states:

3

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Subparagraph (B) provides exceptions, and subparagraph (C) describes "[t]reatment of aliens arriving from contiguous territory." *See* 8 U.S.C. §§ 1225(b)(2)(B)–(C). None of these provisions refer to aliens who entered at a port of entry, were paroled into the country, or had their parole terminated or revoked.

The Government suggests an "arriving alien" qualifies as an "applicant for admission" under § 1225(b)(2). *See* (Gov't Resp. in Opp'n at 9). Even so, an applicant for admission must be "seeking admission" for § 1225(b)(2) to apply. 8 U.S.C. § 1225(b)(2)(A); *see also Tumba v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025) (same). District courts have defined "seeking admission" as "physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization." *See Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 196505, at *9 (E.D. Pa. Jan. 26, 2026) (collecting cases). So § 1225(b)(2) does not apply to aliens "who have already entered and resided in the United States for an extended period."[1] *Id.* Murodov was already in the United States—not "seeking admission"—when ICE agents arrested him in January of 2026. (Pet. ¶¶ 21, 25.)

---

[1] The Fifth Circuit recently construed "applicant for admission" the same as "seeking admission" under § 1225(b)(2). *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330, at *8–9 (5th Cir. Feb. 6, 2026). Every district court in this Circuit has held otherwise. *See Mirdjalilov v. Warden of Fed. Det. Ctr. Phila*, No. 25-7068, 2026 WL 184249, at *5 (E.D. Pa. Jan. 23, 2026) (collecting more than fifty cases from the Eastern District); *Ndiaye v. Jamison*, No. 25-6007, 2026 WL 373247, at *7 n.10 (E.D. Pa. Feb. 10, 2026) (collecting cases).

The only provision in the INA that speaks of "arriving aliens" is § 1225(b)(1), which applies when "an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible."  8 U.S.C. § 1225(b)(1)(A)(i).  Under that provision, aliens may be removed "without further hearing or review" pursuant to "an expedited removal process."  *Jennings v. Rodriquez*, 583 U.S. 281, 287 (2018) (citing 8 U.S.C. § 1225(b)(1)(A)(i)).  The Government never claims Murodov was detained under § 1225(b)(1), nor had it begun expedited removal proceedings against him in the three years he lived in the country before his arrest.

As the Supreme Court has explained, "aliens already in the country pending the outcome of removal proceedings" are subject to discretionary detention under § 1226(a), not mandatory detention under § 1225(b)(2).  *Jennings*, 583 U.S. at 289; *see also Demirel*, 2025 WL 3218243, at *1 (citing several hundred district court decisions finding that aliens already in the country are subject to discretionary detention).  Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  The Attorney General "may release" an alien on "bond" or "conditional parole," *see id.* § 1226(a)(2), and the alien may appeal an initial custody determination to an immigration judge, *see* 8 C.F.R. § 1236.1(d)(1).

Because the Government detained Murodov under § 1226(a) and not § 1225(b)(2), it must afford him the opportunity to seek bond at a hearing before an immigration judge.  *See Demirel*, 2025 WL 3218243, at *5.  The Court need not address Murodov's due process or APA claims.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.